IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

FILED/REC'D
2022 OCT 12 P 4: 31
CLERK OF COURT
U.S. DISTRICT WMC

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | SEALED INDICTMENT |
| ROBERT CARTER, | Case No. 22 CR 124 WMC |
| Defendant. | 18 U.S.C. § 1343 |
| | 18 U.S.C. § 1349 |
| | 18 U.S.C. § 1028A |
| | 18 U.S.C. § 1956(a)(1)(A)(i) |
| | 18 U.S.C. § 981(a)(1)(C) |
| | 18 U.S.C. § 982 |
| | 18 U.S.C. § 2461(c) |

THE GRAND JURY CHARGES:

COUNTS 1-17

1. At times material to this indictment:

   a. The defendant, ROBERT CARTER, had his name legally changed from Robert Earl McDonald to Robert Earl Carter on February 21, 2017, by order of the circuit court in Eau Claire County, Wisconsin. The defendant used other aliases, in addition to the names of Robert McDonald and Robert Carter, including but not limited to: Allison James, Robert Newman Carter, and Newman Carter.

   b. The defendant moved to Eau Claire, Wisconsin from Puerto Rico in December 2016. The defendant purchased a home located at 3921 Forest Heights Drive, Eau Claire, Wisconsin in July 2017.

   c. Charter Communications provided internet service for defendant's home located at 3921 Forest Heights Drive, Eau Claire, Wisconsin.

    d.  The defendant created a number of shell business entities and trusts which included: (1) TRC Energy Group, LLC, (2) TRC Energy Group Puerto Rico, LLC, (3) Carter Industries, LLC, (4) Newman Carter Enterprises, LLC (5) Carter Transportation Group LLC, (6) Carter Transportation Inc., (7) Carter Enterprises, (8) Robert Earl Carter and Casandra Ivelisse Barral Borgos Living Trust, and (9) CIBB & REC Living Trust. None of these shell business entities or trusts filed tax returns or reported any income to the Internal Revenue Service. (IRS).

    e.  The defendant filed a Form 1040 for tax year 2017 with the IRS reporting total income of $21,579, with all of it being wages from different employers. The defendant electronically filed the 2017 return on January 29, 2018 using email address: renewmancarter@outlook.com, and an ISP address of 47.35.165.15, which comes back to the defendant's home at 3921 Forest Heights Drive, Eau Claire, Wisconsin. The defendant filed as a single person with no dependents and listed his occupation as "other."

    f.  The defendant did not file a Form 1040 for tax year 2018. However, W-2 forms filed with the IRS from his employers indicate that he earned a total of $3,759 in wage income from two different employers.

    g.  The defendant maintained 62 different bank accounts in various names, including those of his shell companies and trusts. These bank accounts included 9 accounts at Wells Fargo Bank, 2 accounts at Marine Credit Union, 3 accounts at BMO Harris Bank, 3 accounts at Bank of America, 6 accounts at Royal Credit Union, 4 accounts at State Department Federal Credit Union, 7 accounts at Boeing Employees

Credit Union, 9 accounts at Navy Federal Credit Union, 2 accounts at Westconsin Credit Union, 1 account at Utilities Credit Union, 1 account at Mountain America Credit Union, 5 accounts at Penfed Credit Union, 2 accounts at Baxter Credit Union, 4 accounts at Banco Popular, 1 account at Caribe Federal Credit Union, and 3 accounts at US Bank.

2. During the period beginning in or about April 2016, and continuing to in or about January 2021, in the Western District of Wisconsin and elsewhere, the defendant,

ROBERT CARTER,

knowingly, and with the intent to defraud, devised and participated in a scheme to defraud, and attempt to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises, and by concealment of material facts.

3. It was part of the scheme to defraud that the defendant obtained, and attempted to obtain, credit cards and loans from banks and other financial institutions under false pretenses by lying on the applications. The defendant would lie in a variety of ways, including listing false employment, listing false income, listing false ownership of real estate, listing false length of times of ownership and residence at his home, and lying about his identity by pretending to be relatives.

4. It was also part of the scheme to defraud that the defendant employed a pyramid scheme against the banks and other financial institutions who issued him credit card and loans. The defendant would take draws on the loans and advances on the credit cards, as well as charges on the credit cards, to finance his living expenses.

However, instead of paying off the loans and credit cards in full, the defendant made only nominal payments to keep the credit cards from being deactivated. The defendant would use new funds he obtained from new credit cards, and new loans, to make the payments on the old credit cards and loans. The defendant repeated this cycle of extending the debt and called his conduct "debt financing" by "generating income through debt." Through this scheme, the defendant financed his living expenses - which included owning two BMW automobiles, a home with a $253,817 mortgage, a lawn service for his home, and a country club membership.

5. It was also part of the scheme to defraud that the defendant made false statements, material omissions, and provided false documents to various business owners and investors in an effort to, among other things: buy or lease semi trucks, buy a company, obtain an ownership share in a company, obtain a management position with the company, and obtain identification and proprietary information from a company (i.e., EIN, bank accounts, audited financial statements, company books and ledgers, and employee payroll data). The defendant's false representations included providing the business owners with documents listing false employment, false income, false net worth, providing false financial statements, providing falsified audited financial statements, and lying about his background, resume, employment history, and finances. Defendant pretended to be someone with sufficient finances to purchase companies, and represented to the sellers of these companies that he was a high net-worth individual who managed a family trust with over $300,000,000 in assets, and who owned a large yacht, multiple airplanes, multiple homes, and numerous companies.

6.    It was further part of the scheme to defraud that the defendant used due diligence requests as part of his company-purchase ruse to obtain a business's identification and proprietary information. Once he obtained this confidential data, the defendant misused it and applied for loans, without the permission or knowledge of the actual business owners.

7.    It was further part of the scheme to defraud that the defendant lied to Victim 1 (MT), pretending that he was interested in purchasing Victim 1's family trucking business. The defendant falsely claimed that his company, TRC Energy Group LLC, and its parent company, Carter Industries, LLC, would pay $770,000 in cash to buy Victim 1's trucking business. As part of his alleged due diligence research, the defendant requested the victim company's confidential business information, including: accounts receivable reports, accounts payable reports, invoices, business EIN, business bank account statements and business cancelled checks, business credit card statements, QuickBooks records, internal financial statements, and audited financial statements. The defendant used Victim 1's information to apply for business loans, including a $790,000 loan for the victim business, without the permission or knowledge of the victim owners.

8.    It was further part of the scheme to defraud that the defendant lied to Victim 2 (PH), pretending that he was interested in purchasing Victim 2's 41 Wisconsin restaurants. The defendant falsely represented to the seller that he was the Senior Trustee and Fund Advisor to a family trust called the CIBB Living Trust. The defendant offered to buy the restaurants for $6,100,000, and made various loan applications with

lenders, falsely representing that the CIBB Living Trust had assets of $100,000,000 and would guarantee any financing required for the purchase of the restaurants.

9. It was further part of the scheme to defraud that the defendant lied to Victim 3 (OT), pretending that he was interested in purchasing Victim 3's family trucking business. The defendant falsely claimed that his company, TRC Energy Group LLC, and its parent company, Carter Industries, LLC, would pay $10,000,000 in cash to buy Victim 3's trucking business. The defendant told the victim owner that he was a high net worth individual with a yacht and a private jet. As part of his alleged due diligence research, the defendant requested the victim company's confidential business information, including: invoices, payroll, billing statements, asset ledgers, accounting records, bank statements and cancelled checks. The defendant used Victim 3's company name to create subsidiary entities and obtain EINs from the IRS for these entities, without the owner's permission. The defendant also used Victim 3's confidential business information to apply for loans, falsely claiming that he owned the trucking business and would use its assets as collateral to secure the loans, all without the knowledge or permission of the victim owner. The defendant falsely claimed that his trust would loan $1,600,000 to Victim 3 to pay off a $600,000 equipment loan before they sold their business to him, but he needed them to first wire him $320,000 to secure the loan. Victim 3 wired $320,000 to the defendant on July 20, 2018.

10. It was further part of the scheme to defraud that the defendant lied to Victim 4 (NT) in an effort to lease 10 semi trucks for his business, Carter Transportation Group LLC, at a cost of $5,075/month, per truck, for 42 months. The defendant falsely

claimed that his trucking business operated from San Diego, California, and that he was an asset manager for a family trust. In support of his truck lease application, the defendant sent Victim 4 copies of alleged audited financial statements for CIBB & REC Trust and internal financial statements for Carter Transportation Group. The financials for the trust falsely listed total assets of $321,764,837 as of April 30, 2019.

11. It was further part of the scheme to defraud that the defendant lied to Victim 5 (FS) in an effort to obtain his personal identification information (PII) by offering Victim 5 an opportunity to invest in Carter Transportation Group LLC, claiming that the defendant would match Victim 5's monetary investment. Prior to investing any money, the defendant had Victim 5 sign a disclosure statement indicating that Victim 5 was aware of the defendant's past, and that Victim 5 waived his right to claim the defendant committed any fraud against Victim 5. After obtaining $135,000 from Victim 5, the defendant said he needed Victim 5's PII in order to put Victim 5 on payroll as a way to pay him his owner distributions. After obtaining Victim 5's PII, the defendant obtained two loans from B.R.L. for Carter Transportation Group using Victims 5's name, SSN, DOB, and address, without Victim 5's knowledge or permission.

12. On or about the dates listed below, in the Western District of Wisconsin and elsewhere, the defendant,

ROBERT CARTER,

for the purpose of executing this scheme, knowingly caused to be transmitted, by means of wire communication in interstate commerce, the signals and writings described below for each count:

| COUNT | DATE | NATURE OF WIRE COMMUNICATION |
|---|---|---|
| 1 | 12-27-17 | Telephone call from the defendant in Eau Claire, WI to State Department Federal Credit Union in Alexandria, VA re: applying for a $12,700 personal loan and a credit card with a $7,500 limit. |
| 2 | 12-28-17 | Credit card application sent online by the defendant in Eau Claire, WI to Synchrony Bank in Stamford, CT re: Walmart Credit Card with a $200 limit. |
| 3 | 2-27-18 | Loan application sent online by the defendant in Eau Claire, WI to NetCredit in Chicago, IL re: installment loan for $7,690 |
| 4 | 3-20-18 | Email at 12:33 pm (using Outlook) from the defendant in Eau Claire, WI to P.S. in Minnesota, re: a draft Letter of Intent to buy Victim 1's business. |
| 5 | 4-5-18 | Credit card application sent online by the defendant in Eau Claire, WI to Credit One Bank in Las Vegas, Nevada re: Credit One Bank Credit Card with a $800 limit. |
| 6 | 4-5-18 | Email at 9:52 am (using Outlook) from the defendant in Eau Claire, WI to J.B. in Kentucky re: Confidential Deal Memorandum for the purchase of Victim 2's restaurants. |
| 7 | 4-11-18 | Credit card application sent online by the defendant in Eau Claire, WI to Credit One Bank in Las Vegas, Nevada re: Credit One Bank Credit Card with a $500 limit. |
| 8 | 4-18-18 | Email at 10:36 am (using Outlook) from the defendant in Eau Claire, WI to J.B. in Kentucky re: Due Diligence Request List for items from Victim 2. |
| 9 | 4-27-18 | Telephone call from the defendant in Eau Claire, WI to J.S. in Shelby, Nebraska re: the CIBB trust has $100 million in it and will guarantee the financing for buying the 41 restaurants from Victim 2. |
| 10 | 5-3-18 | Credit card application sent by the defendant in Eau Claire, WI to State Department Federal Credit Union in Alexandria, VA re: VISA credit card with a $5,000 limit. |
| 11 | 5-10-18 | Loan application sent by the defendant in Eau Claire, WI to State Department Federal Credit Union in Alexandria, VA re: Home Equity Line of Credit for $8,500. |

| COUNT | DATE | NATURE OF WIRE COMMUNICATION |
|---|---|---|
| 12 | 7-15-18 | Email at 1:08 pm (using Outlook) from the defendant in Eau Claire, WI to M.V. in Green Bay, WI re: $1.6 million loan proposal to Victim 3 with a $320,000 payment back to the defendant. |
| 13 | 7-26-18 | Email at 8:51 am (using Outlook) from M.V. to Victim 3, forwarding an email from the defendant (using Outlook) with attachments that include audited financials for defendant's trust showing total assets of $350,669,000. |
| 14 | 2-18-20 | Email at 6:54 pm (using Outlook) from the defendant in Eau Claire, WI to Victim 5 in Florida re: request to sign Carter History Disclosure Statement. |
| 15 | 8-3-20 | Email at 3:08 pm (using Outlook) from the defendant in Eau Claire, WI to C.P. in Minnesota re: sending financial statements for CIBB Trust and Carter Transportation Group to Victim 4. |
| 16 | 1-8-21 | Email at 9:42 am (using Outlook) from the defendant in Eau Claire, WI to C.S. at B.R.L. in Georgia re: sending a fake bank wire transfer confirmation showing a payment on 1-8-21 for $34,971.91 to pay unpaid loan payments. |
| 17 | 1-25-18 | Email at 4:04 pm (using Outlook) from the defendant in Eau Claire, WI to C.S. at B.R.L. in Georgia re: claiming the bank says the wire was received by B.R.L.'s bank. |

(In violation of Title 18, United States Code, Sections 1343 and 1349)

COUNTS 18-19

On or about the dates listed below, in the Western District of Wisconsin and elsewhere, the defendant,

ROBERT CARTER,

knowingly used without lawful authority, a means of identification of another person, specifically the name of a real individual, during and in relation to a felony violation

enumerated in 18 U.S.C. § 1028A(c), that is: wire fraud as alleged in Counts 1-17 above, knowing that the means of the identification belonged to another actual person:

| COUNT | DATE | NATURE OF IDENTITY THEFT |
|---|---|---|
| 18 | 7-21-20 | The defendant used the name, address, SSN, DOB and forged signature of F.S. on a loan application and attached documents (for loan number 60-1119-6505 from B.R.L.) for Carter Transportation Group. |
| 19 | 9-8-20 | The defendant used the name, address, SSN, DOB and forged signature of F.S. on a loan application and attached documents (for loan number 60-1120-6668 from B.R.L.) for Carter Transportation Group. |

(In violation of Title 18, United States Code, Section 1028A(a)(1)).

## COUNTS 20-25

1. Paragraph 1 of Count 1 is incorporated here.

2. On or about the dates listed below, in the Western District of Wisconsin, and elsewhere, the defendant,

ROBERT CARTER,

knowingly conducted and attempted to conduct the following financial transactions, which affected interstate commerce, which financial transactions involved the proceeds of a specified unlawful activity, specifically, wire fraud, with the intent to promote the carrying on of said specified unlawful activity, and that while conducting and attempting to conduct the financial transactions listed below, the defendant knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity:

| COUNT | DATE | NATURE OF TRANSACTION |
|---|---|---|
| 20 | 2-7-18 | Online payment from Wells Fargo account xxx-7409 for $129 to pay the Synchrony Bank credit card |
| 21 | 7-5-18 | Online payment from Wells Fargo account xxx-7409 for $50 to pay the Synchrony Bank credit card |
| 22 | 7-5-18 | Online payment from Wells Fargo account xxx-7409 for $57.27 to pay the Bank of America credit card |
| 23 | 7-5-18 | Online payment from Wells Fargo account xxx-7409 for $88.02 to pay the Citi Bank credit card |
| 24 | 7-5-18 | Online payment from Wells Fargo account xxx-7409 for $100.62 to pay the Credit One Bank credit card |
| 25 | 7-6-18 | Online payment from Boeing Employees Credit Union account xxx-8412 for $76.21 to pay the Credit One Bank credit card |

(All in violation of Title 18 United States Code Section 1956(a)(1)(A)(i)).

FORFEITURE ALLEGATION

1. Upon conviction of one or more of the offenses alleged in Counts 1-17 of this indictment, the defendant,

ROBERT CARTER,

shall forfeit to the United States, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982 and 28 U.S.C. § 2461(c), any property constituting or is involved in, or is derived from proceeds traceable to the above-referenced offense, including but not limited to the following:

    a. A sum of money equal to $511,177 in United States currency, representing the amount of proceeds obtained as a result of the wire fraud, as charged in Counts 1-17 of the indictment.

2. If any of the above-described forfeitable property, as a result of any act or omission of the defendant --

    (a) cannot be located upon the exercise of due diligence,

    (b) has been transferred or sold to, or deposited with, a third party,

    (c) has been placed beyond the jurisdiction of the court,

    (d) has been substantially diminished in value, or

    (e) has been commingled with other property which cannot be subdivided without difficulty,

the United States shall be entitled, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to forfeiture of substitute property up to the value of the above forfeitable property.

(In violation of Title 18, United States Code, Sections 981(a)(1)(C), 982 and Title 28, United States Code, Section 2461(c)).

A TRUE BILL

_____
PRESIDING JUROR

Indictment returned: 10-12-2022

_____
TIMOTHY M. O'SHEA
United States Attorney