IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROBERT CARTER,

    Defendant.

ORDER

22-cr-124-wmc

---

This order is simply to acknowledge receipt of and briefly respond to "Defendant's Letter Response to the Court's Denial for Emergency Travel," which he chose to docket formally in this case (dkts. #128, 129), and unfortunately includes misstatements and gross speculation as to the court's reasons for denying his latest of numerous requests for special consideration to travel, then leaps to accuse the court of despicable underlying motives.

Some limited context is required. First, although still in his early forties, the defendant has already been convicted three times in the U.S. District Court for the Southern District of New York for wire fraud, wire fraud committed while on release pending sentencing, and most recently, three counts of securities, wire and mail fraud. (Dkt. #87.) After serving 70 months in federal prison for his most recent conviction, the defendant was also revoked for noncompliance with his terms of supervision by this court. *See U.S. v. McDonald*, Case No. 3:18-cr-31-wmc. He is now before this court again after being indicted on 23 counts of wire fraud and two counts of identity theft. (Dkt. #2.)

Second, given his criminal history of repeated, substantial fraudulent activity, as well as additional evidence presented at an October 20, 2022, hearing (dkt. #8), Magistrate Judge Stephen L. Crocker concluded that defendant "cannot be trusted to comply with any conditions of release this court might impose, he cannot be trusted to obey the law if released,

1

and he cannot be trusted to stick around through the end of this prosecution." (Dkt. #16.) However, in his appeal to an Article III judge, this court concluded that despite the real risk of defendant committing new, non-violent crimes, as well as violations of the terms and conditions of any release, the court found sufficient safeguards could be put in place to ensure: defendant, who by then was representing himself, would not abscond; probation could adequately monitor his ongoing activities; and he could concentrate on preparing for trial, which is rapidly approaching.

Third, despite stretching to find terms and conditions to allow for defendant's pretrial release over recommendations by the magistrate and the probation office, the court has been rewarded with an unprecedented number of motions from defendant for additional, specific travel exceptions after being initially denied by the probation office (dkts. ##54-55, 60, 78, 85, 90, 103) and to otherwise modify his release conditions (dkts. #59, 82, 85, 103). Not only were defendant's multiple requests opposed by the government (dkt. #89), but precipitated a request to revoke his pretrial release altogether based on concerning, newly alleged fraudulent activity and violations of defendant's conditions of release. Thus, following Magistrate Judge Crocker's recusal from further involvement in this case on defendant's motion, I held an omnibus hearing just before the holidays, on December 20, 2023, to address all of the parties' pending motions, finding in addition to specific rulings (dkt. #119) that defendant was generally not working with or respecting his probation officer as to requests for travel exception and modifications to his supervised release conditions, but rather bringing unnecessary motions to override the officer's reasonable exercise of discretion. (12/20/23 Tr.

2

(dkt. #130) at 16-17.) In fact, the court stressed the need for *both* sides of this case to work with the Probation Office before rushing to court. (*Id.* at 27.)

With this as context, the court turns to its most recent denial of the "Defendant's Emergency Ex Parte Motion to Travel to Rochester, MN" (dkt. #125), which had been filed just after New Year's on January 5, 2024, and seeks to accompany "his grandfather-in-law to an emergency procedure," which the court summarily denied that same day "based on his apparent failure to first consult with Pretrial Services" and precipitated defendant's ill-considered, now filed letter, also dated that same day.

In fairness, the first paragraph of defendant's letter represents that the Probation Office has, unbeknownst to the court, adopted a general policy to deny requests for "out-of-state travel or any overnight travel whether in state or out of state when defendant is on GPS monitoring." Even if this were the Probation Office's general policy, defendant is *not* relieved of his obligation to consult with them about extraordinary circumstances that he believes warrant an exception before coming to this court on the same basis. Indeed, after following up with the supervising probation officer in response to my denial, my understanding is that defendant *was* allowed to travel out-of-state to Rochester, Minnesota, to retrieve his grandfather-in-law, provided he completed the round-trip in one day.

The next paragraph of defendant's letter simply assumes that I must have been aware of this so-called policy, meaning my order "referring [him] to the pre-trial services office is a pre-text for bias and discrimination." Not only was I unaware of any such general policy, but am aware of a number of occasions when exceptions have been made for someone under active supervision by both the Probation Office or this court for out-of-state (and even out-of-

3

country) travel under extraordinary circumstances for a week or more, although admittedly I am unsure and did not consider whether an exception would apply to someone on GPS until now.

Regardless, there is no basis for the defendant's ad hominem attacks on my character as a judge or person in the third paragraph of his letter, much less the even more scurrilous accusations made in the fourth paragraph as to the reasons for my denial, especially given the extraordinary accommodations this court and the Probation Office have already extended him to remain out of custody to date. I further hope such rash and charged language will not be used again during this case, just as plaintiff's behavior in the courtroom at the last hearing (by shutting down and categorically dismissing the court's rulings as unnuanced and baseless once he lost a particular motion) cannot be repeated. Indeed, both are examples of behaviors that, if repeated in front of the jury, may result in the waiver of the defendant's right to represent himself. *See United States v. Berry*, 565 F.3d 385, 390 (7th Cir. 2009) ("a defendant can forfeit his right to self-representation by 'deliberately engag[ing] in serious and obstructionist misconduct'") (quoting *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975)).

Entered this 18th day of January, 2024.

BY THE COURT:

WILLIAM M. CONLEY
District Judge